IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| | : | |
| v. | : | NOS. 21-cr-038 & 21-cr-043 |
| | : | |
| LAWRENCE ROOKS | : | |
| | : | |

**Kenney, J.**                                                                                       **January 28, 2022**

## MEMORANDUM

On March 9, 2021, Defendant Lawrence Rooks pled guilty to two criminal counts related to the distribution of heroin.[1] *USA v. Rooks*, 2:21-cr-0038-CFK-1 ("*Rooks I*" or "Dkt. 1"); *see also* Dkt. 1 ECF No. 42. On that same day, in relation to a separate Information, Mr. Rooks also pled guilty to five criminal counts related to the possession of a firearm.[2] *USA v. Rooks*, 2:21-cr-0043-CFK-1 ("*Rooks II*" or "Dkt. 2"); *see also* Dkt. 2 ECF No. 4. Subsequently these two separate cases were consolidated for purposes of disposition and sentencing. Dkt. 1 ECF No. 57 at pp. 4, 7; Dkt. 2 ECF No. 18 at pp. 4, 7. In relation to the consolidated sentencing for these two cases, the advisory sentencing guidelines range for Mr. Rooks' sentence was calculated to be 151 to 188 months of incarceration, and the parties stipulated in the relevant plea agreement to a sentence between 92 and 115 months of incarceration. Dkt. 1 ECF No. 52 at p. 1; Dkt. 1 ECF No. 53 at p. 9; Dkt. 2 ECF No. 13 at p. 1; ECF No. 14 at p. 9.  On July 8, 2021, this Court

---

[1] Specifically, Mr. Rooks pled guilty to two counts (Counts I and II) of the distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(c). Dkt. 1 ECF No. 42.

[2] Specifically, Mr. Rooks pled guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Counts I and II), and to aiding and abetting making false statements to a federal firearms licensee, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2 (Counts III, IV, and V). Dkt 2 ECF No. 4.

sentenced Mr. Rooks to a 92-month term of incarceration, four years of supervised release, and a $700 special assessment.[3] Dkt. 1 ECF No. 57 at pp. 4, 7; Dkt. 2 ECF No. 18 at pp. 4, 7.

Mr. Rooks is currently serving this sentence, and on October 18, 2021, Mr. Rooks filed, on both relevant case dockets, essentially identical *pro se* Motions for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing that "extraordinary and compelling reasons," including his two-year-old child's need for a caregiver, warrant a reduction of his sentence. Dkt. 1 ECF No. 58 at p. 2; Dkt. 2 ECF No. 19 at p. 2. On November 12, 2021, the Government filed a Response in Opposition to Defendant's Motion for Compassionate Release based on the availability and ability of other caregivers, the consideration of the factors set forth under 18 U.S.C. § 3553(a), as well as the risk of danger Defendant presents to the community. Dkt. 1 ECF No. 61 at p. 1; Dkt. 2 ECF No. 23 at p. 1. Mr. Rooks also filed, on both case dockets, essentially identical *pro se* Motions for Appointment of Counsel. Dkt. 1 ECF No. 60; Dkt. 2 ECF No. 21.

This Court addresses all four Motions herein, and for the reasons stated below, Defendant's Motions for Compassionate Release (Dkt. 1 ECF No. 58; Dkt. 2 ECF No. 19) and Defendant's Motions for Appointment of Counsel (Dkt. 1 ECF No. 60; Dkt. 2 ECF No. 21) are hereby **DENIED**. Appropriate orders will follow.

I. **BACKGROUND**

A.  **Mr. Rooks' Criminal History**

Mr. Rooks has a criminal record dating back to 2001. Dkt. 1 ECF No. 61 at p. 3; Dkt. 2 ECF No. 23 at p. 3. In 2001, Mr. Rooks was convicted of theft related to the possession of a stolen car and sentenced to probation. Dkt. 1 ECF No. 61 at p. 3; Dkt. 2 ECF No. 23 at p. 3. On

---

[3] Mr. Rooks was specifically sentenced to a term of 92 months on each of Counts I and II in relation to *Rooks I* and in relation to *Rooks II,* a term of 92 months on each of Counts I and II and a term of 60 months on each of Counts III, IV, and V, all to run concurrently. Dkt. 1 ECF No. 57 at p. 4; Dkt. 2 ECF No. 18 at p. 4.

July 1, 2005, Mr. Rooks was convicted of possession with intent to distribute by the Cape May County Superior Court in New Jersey. Dkt. 1 ECF No. 1 at ¶ 12. On December 4, 2009, Mr. Rooks was convicted of possession of a firearm prohibited in the Commonwealth of Pennsylvania. *Id.* On January 6, 2016, Mr. Rooks was convicted of robbery and conspiracy in the Commonwealth of Pennsylvania. *Id.* For that offense, Mr. Rooks was sentenced to 11.5 to 23 months of incarceration and five years of probation. *Id.*

The facts underlying Mr. Rooks' present sentence are as follows. First, in relation to *Rooks I*, on or around October 25, 2018, Mr. Rooks sold 57.8 grams of heroin to a confidential source for $3,770.00. Dkt. 1 ECF No. 61 at p. 1. Weeks later, Mr. Rooks sold 96.8 grams of heroin and a firearm to a confidential source for $7,550.00. *Id.* at p. 2. In connection with these narcotics transactions, Mr. Rooks was charged with two counts of distribution of heroin on February 17, 2021. Dkt. 1 ECF No. 46 at ¶ 1.

Separately, in relation to *Rooks II*, Mr. Rooks arranged for a straw purchaser to buy three guns on his behalf. Dkt. 2 ECF No. 23 at p. 2. Specifically, on three separate occasions, the straw purchaser bought firearms by filling out ATF Form 4473 and falsely representing that he was the actual buyer of the weapons, when in reality he intended to give the guns to Mr. Rooks. *Id.* After the first two purchases, the straw purchaser delivered each firearm successfully to Mr. Rooks, however, on July 30, 2019, during the attempted delivery of the third firearm, Mr. Rooks was arrested by an ATF agent. *Id.* On February 19, 2021, Mr. Rooks was charged with two counts of possession of a firearm by a felon and three counts of making a false statement to a federal firearms licensee. Dkt. 2 ECF No. 8 at ¶ 1. At the time he committed these offenses Mr. Rooks was on probation for his 2016 robbery offense, and, for this reason, during sentencing he was placed in the highest criminal history category, Category VI. Dkt. 1 ECF No. 61 at pp. 3–4

(quoting Presentence Investigation Report ("PSR") at ¶ 60); Dkt. 2 ECF No. 23 at pp. 3–4 (quoting PSR at ¶ 60).

As previously mentioned, pursuant to the U.S. Government's unopposed Motion to Consolidate, the two above-captioned cases were consolidated for the purposes of disposition and sentencing. Dkt. 1 ECF No. 46–1; Dkt. 2 ECF No. 8–1. On July 8, 2021, this Court accepted Mr. Rooks' guilty plea as to all seven counts and sentenced him to 92 months' incarceration, four years of supervised release, and a $700 special assessment.[4] Dkt. 1 ECF No. 57 at pp. 4, 7; Dkt. 2 ECF No. 18 at pp. 4, 7.

Mr. Rooks is serving his sentence at Forrest City Medium FCI with an anticipated release date of September 23, 2026. Dkt. 1 ECF No. 61 at p. 4; Dkt. 2 ECF No. 23 at p. 4. Presently, he has served approximately 20 months and has credit for approximately two months good conduct time, totaling approximately 22 months of time served. Dkt. 1 ECF No. 61 at p. 4; Dkt. 2 ECF No. 23 at p. 4. Mr. Rooks has not committed any disciplinary infractions during his time in custody. Dkt. 1 ECF No. 61 at p. 4; Dkt. 2 ECF No. 23 at p. 4.

### B.  Mr. Rooks' Family History

Mr. Rooks was born to Mr. Joseph Rooks and Ms. Lydia Rooks in October of 1981. PSR at ¶ 68. Mr. Joseph Rooks lives in Delaware and works as a hospital technician, while Ms. Lydia Rooks lives in Atlanta, Georgia and works as a location coordinator for a movie production company. *Id.* When Mr. Rooks was three years old, his parents divorced. *Id.* at ¶ 68. Because of Ms. Lydia Rooks' alleged substance abuse, Mr. Rooks was primarily raised by his grandmother, Ms. Clara Watson-Daniels, who worked for the Philadelphia Sanitation Department. *Id.* at ¶ 72.

---

[4] As previously noted, Mr. Rooks was specifically sentenced to a term of 92 months on each of Counts I and II in relation to *Rooks I* and in relation to *Rooks II,* a term of 92 months on each of Counts I and II and a term of 60 months on each of Counts III, IV, and V, all to run concurrently. Dkt. 1 ECF No. 57 at p. 4; Dkt. 2 ECF No. 18 at p. 4.

Mr. Rooks has a sister, Ms. Danielle Rooks, who lives in Atlanta, Georgia and works as a therapeutic support staff worker. *Id.* at ¶ 69. Mr. Rooks also has four paternal half-siblings, including Ms. Kaira Rooks, a schoolteacher, and Ms. Tiffany Rooks, a medical billing worker, who both live in Philadelphia, as well as Mr. Robert Rooks, an employee for the Transportation Security Administration, who lives in Virginia, and Kuran Rooks, who is disabled. *Id*. at ¶ 70. Mr. Rooks has only occasional contact with his paternal half-siblings. *Id.*

Mr. Rooks also has two maternal half-sisters, and by contrast, Mr. Rooks speaks regularly with both of them, Ms. Mecca Miles, who is a therapeutic support staff worker, and Ms. Maya Johnson, who is the owner and operator of a beauty salon. *Id.* at ¶ 71. Both Ms. Miles and Ms. Johnson reside in Atlanta, Georgia. *Id.* Upon his eventual release from custody, Mr. Rooks has indicated that he plans to live with Ms. Miles in Georgia. *Id.* at ¶ 81.

In 2018, Mr. Rooks married Ms. Porsha Williams. *Id.* at ¶ 74. The two are the biological parents of a two-year-old male child. *Id.* at ¶ 75. The child was born three months prematurely and suffers from a heart murmur. *Id.* Prior to Mr. Rooks' detainment for the instant offenses, Mr. Rooks, Ms. Williams, and their son lived together in an apartment in Philadelphia. PSR ¶ 76. Mr. Rooks continued to pay the rent for the apartment until he filed for divorce from Ms. Williams in 2020. *Id.* At the time the Presentence Investigation Report was filed, the child was residing with Ms. Williams in Philadelphia. *Id.* at ¶ 75. Mr. Rooks' grandmother, Ms. Watson-Daniels alleges that Ms. Williams was evicted from the apartment she formerly shared with Mr. Rooks and that Ms. Williams will not disclose her current address to Mr. Rooks' family members. Dkt. 1 ECF No. 58 at p. 20; Dkt. 2 ECF No. 19 at p. 20.

II. <u>**DISCUSSION: DEFENDANT'S MOTIONS FOR COMPASSIONATE RELEASE**</u>

    A. **Legal Standard**

Mr. Rooks *pro se* moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 1 ECF No. 58 at p. 2; Dkt. 2 ECF No. 19 at p. 2. As amended by the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A) allows courts to modify a term of imprisonment in any case where (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) where the court has considered the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 394–95 (E.D. Pa. 2020) (Brody, J.). Defendants filing such a motion must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or have experienced a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[5]

While Congress has not defined "extraordinary and compelling reasons," the United States Sentencing Commission issued a policy statement to describe qualifying circumstances. *See* U.S.S.G. § 1B1.13. Although the policy statement predates the First Step Act, the Third Circuit has articulated its persuasiveness in shedding light on what constitutes "extraordinary and compelling." *See United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021) ("Because Congress reenacted the compassionate-release statute without any alterations to the phrase 'extraordinary and compelling reasons,' it was reasonable for the court to conclude that the phrase largely retained the meaning it had under the previous version of the statute.").

The Sentencing Commission policy statement sets out three specific "extraordinary and compelling reasons" based on the defendant's medical condition, age, or family circumstances. *See* § 1B1.13, cmt. n.1(A)–(C). Applicable "family circumstances" include "[t]he death or

---

[5] The Government does not contest that Mr. Rooks has satisfied this step. *See* Dkt. 1 ECF No. 61 at 4; Dkt. 2 ECF No. 23 at 4.

incapacitation of the caregiver of the defendant's minor child or minor children." § 1B1.13, cmt. n.1(C)(i). The Sentencing Commission also includes a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n.1(D); *see also United States v. Adeyemi*, 470 F. Supp. 3d 489, 509–510 (E.D. Pa. 2020) (Kearney, J.) (stating that the "catch-all" prevents courts from being "hamstringed because the Sentencing Commission has failed to update the pertinent guidance.").

Only if a defendant's circumstances qualify as "extraordinary and compelling," will the court look to the Section 3553(a) factors to determine whether Defendant is entitled to a reduction in sentence. 18 U.S.C. § 3582(c). Those factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

The defendant bears the burden of proving by a preponderance of the evidence that the requested relief is warranted. *United States v. Jeffries*, No. CR 14-106, 2021 WL 2000555, at *7 (W.D. Pa. May 19, 2021)

### B. Defendant's Motions for Compassionate Release

In his Motion for Compassionate Release, Mr. Rooks argues that he is eligible for early release because he is the only available caregiver for his two-year-old son as a result of all other potential caregivers being unavailable or incapacitated. Dkt. 1 ECF No. 58 at pp. 6–8; Dkt. 2 ECF No. 19 at pp. 6–8.

7

Although the at the time of the Presentence Investigation Report, it was agreed upon that the child was in the care of Ms. Williams, Mr. Rooks now appears to assert that Ms. Williams has generally left the care of the child to his relatives and that an opioid addiction renders Ms. Williams otherwise incapacitated from caring for the child.[6] In support of this contention, Mr. Rooks has provided letters to the Court written by Mr. Rooks' grandmother, half-sister, and mother, that also express concerns about Ms. Williams caregiving abilities. Dkt. 1 ECF No. 58 at pp. 20–22; Dkt. 2 ECF No. 19 at pp. 20–22. Mr. Rooks' version of the facts, however, is, at least in part, contradicted by the letters provided by Ms. Watson-Daniels and Ms. Lydia Rooks, who despite their concerns, both give accounts of the family circumstances indicating that the child is primarily in the care of Ms. Williams. Dkt. 1 ECF No. 58 at pp. 20, 22; Dkt. 2. ECF No. 19 at pp. 20, 22.

In any case, according to Mr. Rooks the current care for his child is "spread out amongst several family members" each of whom have situations that make them incapable of providing full-time care. Dkt. 1 ECF No. 58 at p. 7; Dkt. 2 ECF No. 19 at p. 7. According to Mr. Rooks, his 79-year-old grandmother, Ms. Watson-Daniels, has "contributed the most" to the child's care, and his half-sister, Ms. Miles, helps out by caring for the child on weekends. Dkt. 1 ECF No. 58 at p. 7; Dkt. 2 ECF No. 19 at p. 7. In support of his argument for compassionate release, Mr. Rooks also asserts that Ms. Watson-Daniels cannot continue caring for the child due to her age and medical issues, and that Ms. Miles cannot take on more caregiving responsibilities because

---

[6] Specifically, Mr. Rooks alleges that in connection with her opioid addiction, Ms. Williams was enrolled in a methadone maintenance program, and that as a result, Mr. Rooks met with a Child Services Coordinator from the Child Community Umbrella Agency, who he claims determined that Mr. Rooks "should be[] and would be" awarded sole guardianship of his child. Dkt. 1 ECF No. 58 at pp. 6–7; Dkt. 2 ECF No. 19 at 6–7. Mr. Rooks has not provided any documentation to this effect. *See generally United States v. Richardson*, No. 5:18-CR-507-LFL, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020) (holding that the mere existence of custody proceedings is not sufficient to warrant release without further evidence regarding status of the proceedings).

of her commitment to her own family and her responsibilities at work. Dkt. 1 ECF No. 58 at pp. 7–8 ; Dkt. 2 ECF No. 19 at pp. 7–8.

Mr. Rooks also argues that his circumstances are extraordinary and compelling pursuant to the "catch-all" provision of the Sentencing Commission's policy statement. More specifically, he contends that his aforementioned circumstances are compounded by the effects of COVID-19 which have "exacted a price on him beyond that imposed by an ordinary prison sentence." Dkt. 1 ECF No. 58 at p. 11; Dkt. 2 ECF No. 19 at p. 11.

Finally, Mr. Rooks claims that the factors set forth under Section 3553(a) weigh in his favor. Dkt. 1 ECF No. 58 at p. 13; Dkt. 2 ECF No. 19 at p. 13. Accordingly, Mr. Rooks contends that the nature of his crimes, while "undoubtedly serious," do not make him a threat to his community, given that the instant offenses were "nonviolent" and his intent upon release is to work, care for his child, and support his family. Dkt. 1 ECF No. 58 at p. 13; Dkt. 2 ECF No. 19 at p. 13.

### C. Government's Response in Opposition to Defendant's Motion for Compassionate Release

In its Opposition to Mr. Rooks' Motion for Compassionate Release, the Government argues that Mr. Rooks has failed to establish extraordinary and compelling circumstances that would warrant his release. Dkt. 1 ECF No. 61 at p. 5; Dkt. 2 ECF No. 23 at p. 5.

Specifically, the Government avers that the materials submitted by Mr. Rooks do not support his claim that he is the only available caregiver for his child, and as such Mr. Rooks has failed to meet his burden of proof. Dkt. 1 ECF No. 61 at p. 1; Dkt. 2 ECF No. 23 at p. 1. In this respect, the Government argues that there is no record evidence supporting the contention that Ms. Watson-Daniels' health or age prevents her from caring for the child as needed. Dkt. 1 ECF No. 61 at p. 10; Dkt. 2 ECF No. 23 at p. 10. Additionally, Ms. Watson-Daniels, the Government

9

maintains, concedes that the child is cared for by his biological mother, Ms. Williams. Dkt. 1 ECF No. 61 at pp. 10–11; Dkt. 2 ECF No. 23 at pp. 10–11. The Government also points to the assistance Ms. Miles has provided in caring for the child and her stated belief that the family has "found a way to pull together & connect [their] family unit." Dkt. 1 ECF No. 61 at p. 11 (quoting Dkt. 1 ECF No. 58 at p. 21); Dkt. 2 ECF No. 23 at p. 11 (quoting Dkt. 2 ECF No. 19 at p. 21).

Moreover, the Government draws the Court's attention to the additional family members who may be capable of caring for the child, including Mr. Rooks' mother, Ms. Lydia Rooks; his sister, Ms. Danielle Rooks; and his other half-sister, Ms. Maya Johnson. Dkt. 1 ECF No. 61 at p. 11; Dkt. 2 ECF No. 23 at p. 11. The Government argues that these three individuals have stable employment and a good relationship with Mr. Rooks and that Mr. Rooks has not met his burden by providing evidence as to why they cannot care for the child if need be. Dkt. 1 ECF No. 61 at pp. 11–12 (referencing PSR ¶¶ 68, 69, 71); Dkt. 2 ECF No. 23 at pp. 11–12 (referencing PSR ¶¶ 68, 69, 71).

The Government argues that even if Mr. Rooks' is found to have presented qualifying extraordinary and compelling circumstances, his relief should nonetheless be denied on the grounds that the factors set forth under § 3553(a) weigh against him, and that he still presents a possible danger to the community. Dkt. 1 ECF No. 61 at p. 12; Dkt. 2 ECF No. 23 at p. 12. Specifically, serving only 22 months of a 92-month term for a "serious drug crime" and firearm offenses, does not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. Dkt. 1 ECF No. 61 at p. 13; Dkt. 2 ECF No. 23 at p. 13.

####    D. Analysis

#####        i. Extraordinary and Compelling Circumstances

Mr. Rooks has failed to satisfy his burden of proving the "extraordinary and compelling" nature of his circumstances so as to warrant a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A)(i) because the evidence provided by Mr. Rooks does not sufficiently establish that he is the sole caregiver for his child. § 1B1.13, cmt. n.1(C); *United States v. Irizzary*, No. CR 14-652-13, 2021 WL 735779, at *7 (E.D. Pa. Feb. 25, 2021) (Kearney, J.) (denying a Motion for Compassionate Release on the grounds that the defendant "fail[ed] to establish he [was] the only person capable of caring for his brother).

In relation to a motion for compassionate release grounded on the claim a defendant is the sole person available to provide care for their minor child, a defendant typically must establish that all other potential caregivers for their minor child are incapacitated. *United States v. Cruz-Rivera*, No. CR 11-43, 2020 WL 5993352, at *6 (E.D. Pa. Oct. 9, 2020) (Slomsky, J.). To prove incapacitation, a defendant must establish a person is "completely disabled" or unable to "carry on any self-care and [are] totally confined to a chair or bed." *Id.* at *7. Moreover, it is not enough to show a potential caregiver is merely "inconvenienced" by the childcare or "somewhat sick." *United States v. Seals*, 509 F.Supp.3d 259, 263 (E.D. Pa. 2020) (McHugh, J.) ("Where relief has been denied, it is typically where a caregiver is inconvenienced by the defendant's incarceration, or is somewhat sick, but not incapacitated."); *Cruz-Rivera*, No. CR 11-43, 2020 WL 5993352, at *7 (finding, in connection with the consideration of a motion for compassionate release, that a defendant's wife was not incapacitated from caring for the couple's son despite being diagnosed with both breast cancer and diabetes).

In the present case, Mr. Rooks has failed to establish that he is the sole caregiver of his two-year-old child. To the contrary, the record indicates that the child's mother, Ms. Williams is currently caring for the child. PSR ¶ 75. Mr. Rooks has not presented evidence to sufficiently

11

establish that Ms. Williams' has abandoned the child or that her alleged substance abuse issues are ongoing and incapacitate her from caring for their child. More specifically, while Mr. Rooks states that Ms. Williams was "enrolled in" a methadone maintenance program, he does not specify whether the program was completed or is ongoing or provide any specific facts that would support a finding of incapacitation. Dkt. 1 ECF No. 58 at p. 6; Dkt. 2 ECF No. 19 at p. 6. In the event that Ms. Williams has already or subsequently does abandon responsibility for the child,[7] Mr. Rooks has several family members who he has also failed to establish are unable to provide care for the child.

    Contrary to Mr. Rooks' assertions, there is no evidence that either Ms. Watson-Daniels' age or her health conditions render her incapable of caring for Mr. Rooks' child. Dkt. 1 ECF No. 58 at pp. 7, 20; Dkt. 2 ECF No. 19 at pp. 7, 20. Ms. Watson-Daniels, herself, does not even claim that she is unable to care for the child full-time; instead she states the child is in the custody of Ms. Williams and that she does not know where Ms. Williams lives. Dkt. 1 ECF No. 58 at p. 20; Dkt. 2 ECF No. 19 at p. 20. Additionally, although Mr. Rooks states conclusively that Ms. Watson-Daniels is "dealing with her own medical issues" that make caring for a child "taxing beyond her capabilities," neither Ms. Watson-Daniels nor Mr. Rooks have asserted that Ms. Watson-Daniels suffers from any specific medical conditions that would support this contention.

---

[7] Mr. Rooks asserts that Ms. Williams' drug use renders her incapable of caring for the child and that the Child Community Umbrella Agency determined that it was in the best interest of the child for Mr. Rooks to be awarded sole guardianship of the child. Dkt. 1 ECF No. 58 at p. 6; Dkt. 2 ECF No. 19 at p. 6. However, Mr. Rooks has not presented evidence to show that there are ongoing custody proceedings in which he is prejudiced by his incarceration. *See United States v. Fields*, No. CR 10-81, 2021 WL 5112251, at *8 (E.D. Pa. Nov. 3, 2021) (granting defendant's motion for compassionate release on the grounds that his child was traumatized in foster care and his incarceration prejudiced his ability to take custody of his daughter); *see also United States v. Paul*, No. 3:18-CR-00227, 2020 WL 5807343, at *2 (S.D.W. Va. Sept. 25, 2020) (Denying motion for compassionate release on the grounds that the "[d]efendant [did] not provide[] evidence that he retain[ed] parental or custodial rights over the children.").

Absent actual medical reasons or circumstances that renders Ms. Watson-Daniels completely disabled, she cannot be deemed incapacitated. *See e.g.*, *Cruz-Rivera*, No. CR 11-43, 2020 WL 5993352, at *7.

Further, in the present case, the evidence does not establish that the burden of contributing to the child's care renders Ms. Miles, Mr. Rooks' half-sister, incapacitated. In her letter to the Court, Ms. Miles writes that she has been "blessed with the opportunity of raising another child," but that she cannot continue to do so because she has three children of her own. Dkt. 1 ECF No. 58 at p. 21; Dkt. 2 ECF No. 19 at p. 21. She also writes that she has experienced financial hardship as a result of raising the child but does not elaborate. Dkt. 1 ECF No. 58 at p. 21; Dkt. 2 ECF No. 19 at p. 21. In Mr. Rooks' Motion, he contends that Ms. Miles had to miss two days of work to take the child to the hospital. Dkt. 1 ECF No. 58 at p. 8; Dkt. 2 ECF No. 19 at p. 8. While the Court is sympathetic to any financial hardships suffered by Ms. Miles in the course of raising her nephew, the circumstances alleged fall far below the relevant standard of "extraordinary and compelling." *See United States v. Gonzalez*, No. 17-CR-60223, 2021 WL 4066897, at *5 (S.D. Fla. Sept. 7, 2021) ("[L]oved ones are often adversely impacted by a family member's incarceration, and must make necessary and inconvenient life adjustments during that individual's incarceration.").

Moreover, Mr. Rooks cannot establish he is the sole caregiver available without addressing the inability of additional nearby family members to provide care for his child in his absence. *Cruz-Rivera*, No. CR 11-43, 2020 WL 5993352, at *7; *Irizzary*, No. CR 14-652-13, 2021 WL 735779 at *8. In the present case, Mr. Rooks has failed to meet this burden. Specifically, he has not established that his mother, Ms. Lydia Rooks, or his other sisters, Ms. Danielle Rooks and Ms. Maya Johnson, cannot care for his child.

Finally, Mr. Rooks' assertion that his punishment has been compounded by the effects of COVID-19 does not qualify his situation as "extraordinary and compelling." *See e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Specifically, the Third Circuit has made clear that "[t]he mere existence of COVID-19 in a society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's . . . extensive and professional efforts to curtail the virus's spread." *Id.*

Here, Mr. Rooks has not made any assertion related to COVID-19 other than that it has deprived him of phone calls, visitation, and has instilled in him a fear of contracting the virus itself, he does not distinguish himself from his fellow inmates. Dkt. 1 ECF No. 58 at p. 11; Dkt. 2 ECF No. 19 at p. 11. Moreover, Mr. Rooks contracted COVID-19 in November of 2020, while in custody at the FDC in Philadelphia, but remained asymptotic and quarantined without any further complications. PSR ¶ 86. Accordingly, this Court finds that the threat of COVID-19, in conjunction with his otherwise unqualifying circumstances, do not so compound his circumstances to the point where they are "extraordinary and compelling." Thus, this Court cannot justify reducing Mr. Rooks sentence on these grounds at this time.

    ii. **18 U.S.C. § 3553(a) Factors**

Because this Court finds that Mr. Rooks does not present "extraordinary and compelling reasons" which warrant a reduction in his sentence under 18 U.S.C. § 3582I(1)(A)(i), it need not consider whether the factors set forth under 18 U.S.C. § 3553(a), support a reduction in Mr. Rooks' sentence.

### III. <u>DISCUSSION: MOTIONS FOR APPOINTMENT OF COUNSEL</u>

On November 1, 2021, two weeks after filing his *pro se* Motions for Compassionate Release, Mr. Rooks filed a *pro se* Motions for Appointment of Counsel. Dkt. 1 ECF No. 60; Dkt. 2 ECF No. 21.

The Supreme Court of the United States has held that a defendant's constitutional right to counsel generally "extends to the first appeal as of right and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *see also United States v. Styer*, 573 F.3d 151, 154 (3d Cir. 2009) ("[A] proceeding under 18 U.S.C. § 3582(c) is not a do-over of an original sentencing proceeding where a defendant is cloaked in rights mandated by statutory law and the Constitution."). Additionally, the Criminal Justice Act (CJA) entitles a defendant to a statutory right of representation from the initial appearance through the appeal, including any "ancillary matters appropriate to the proceedings." 18 U.S.C.S. § 3006A(c). Courts, however, have the discretion to evaluate whether the issues involved in petitioners' motions for compassionate release warrant the participation of counsel on a case-by-case basis. *United States v. Dorsey*, 520 F. Supp. 3d 681, 684 (E.D. Pa. 2021) (McHugh, J.). Foremost, the court must determine whether a defendant's claim has "some merit in fact and law." *Id.* (quoting *Tabron v. Grace*, 6 F.3d 147, 155–57 (3d Cir. 1993)). Only if a petitioner fulfills this initial burden will a court need to consider:

> 1. the plaintiff's ability to present his or her own case; 2. the difficulty of the particular legal issues; 3. the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; 4. the plaintiff's capacity to retain counsel on his or her own behalf; 5. the extent to which a case is likely to turn on credibility determinations, and; 6. whether the case will require testimony from expert witnesses.

*Id.*

Upon consideration of the relevant facts and law in this case, this Court finds that the proceeding does not warrant the appointment of counsel on behalf of Mr. Rooks. Specifically, as

evaluated within this Memorandum, Mr. Rooks' claim fails to present adequate "merit in fact and law," as Mr. Rooks has plainly been unable to make a showing of facts that would constitute "extraordinary and compelling reasons" warranting compassionate release. *Dorsey*, 520 F. Supp. 3d at 684; *see also* 18 U.S.C. §3582(c)(1)(A)(i). For this reason, this Court need not consider the additional factors set forth in *Dorsey*, and Mr. Rooks Motions for Appointment of Counsel will be denied. 520 F. Supp. 3d at 684.

### IV. CONCLUSION

For the forgoing reasons, Defendant Lawrence Rooks' Motions for Compassionate Release (Dkt. 1 ECF No. 58; Dkt. 2 ECF No. 19) and Motions Appointment of Counsel (Dkt. 1 ECF No. 60; Dkt. 2 ECF No. 21) are hereby **DENIED**.

**BY THE COURT:**

**DATED:** 1/28/2022

/**s**/ *Chad F. Kenney*

**CHAD F. KENNEY, JUDGE**

Cc:   U.S. Attorney
      U.S. Probation
      Pro Se Movant